UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
ALEXANDRIA DIVISION

c

| | |
|---|---|
| THADDYEUS AARON DIXON, SR., *ET AL.*, Plaintiffs | CIVIL ACTION NO. 1:18-CV-00133 |
| VERSUS | JUDGE DRELL |
| KEATON A. SPURLIN, *ET AL.*, Defendants | MAGISTRATE JUDGE PEREZ-MONTES |

## REPORT AND RECOMMENDATION

Before the Court is a Partial Motion to Dismiss (Doc. 72) filed by Defendant FCA US L.L.C ("FCA US"). A motion hearing was held on January 8, 2019 before the undersigned. (Doc. 86). Plaintiffs Thaddyeus Aaron Dixon, Sr. and Alfra Dixon, individually and on behalf of their minor children (collectively, "Plaintiffs") oppose. (Doc. 74). FCA US seeks dismissal under Fed. R. Civ. P. Rule 12(b)(6) of Plaintiffs' claims of defective design, defective construction or composition, and breach of express warranty under the Louisiana Products Liability Act ("LPLA"). (Doc. 72).[1]

Because the LPLA provides the exclusive remedy for products liability claims against FCA US, and because Plaintiffs fail to assert a plausible LPLA claim for nonconformity to express warranty, FCA US's Partial Motion to Dismiss (Doc. 72) should be GRANTED IN PART. Because Plaintiffs state plausible LPLA claims for unreasonably dangerous defective design and defective construction or composition, FCA US's Partial Motion to Dismiss (Doc. 72) should be DENIED IN PART.

---

[1] FCA US also seeks dismissal of any non-LPLA claims to the extent asserted. (Doc. 72).

I.  Background

In December 2016, Plaintiffs' 2006 Chrysler Town and Country ("the Chrysler") was rear-ended by Keaton Spurlin ("Spurlin"). (Doc. 67, pp. 2-3). Spurlin's blood alcohol content was determined to be nearly three times the legal limit at the time of the accident. (Doc. 67, p. 3). Plaintiffs' car swerved off and back onto the roadway before entering a ditch, rolling several times, and finally coming to a stop. Id. Three of Plaintiffs' four minor children – Farrah Dixon ("Farrah"), Ava Dixon ("Ava"), and T.J. Dixon ("T.J.") – sustained injuries as a result of the accident. (Doc. 67, pp. 4-5). T.J. sustained fatal injuries. Id.

Plaintiffs originally filed suit in a Louisiana state court against Spurlin, Allstate Insurance Company ("Allstate"), Dorel Juvenile Group, Inc. ("Dorel"), and FCA US.[2] (Doc. 1-2). FCA US removed under the bankruptcy removal statute, 28 U.S.C. § 1452(a), invoking this Court's jurisdiction under 28 U.S.C. § 1334(b). (Doc 1-2, p. 4).

Plaintiffs assert Spurlin is liable for his negligence, fault, and wanton and reckless disregard for safety. (Doc. 67, p. 5). Plaintiffs bring claims under the LPLA against Chrysler, as manufacturer of the Chrysler, and against Dorel, as

---

[2] Plaintiffs refer to FCA US as "Chrysler." (Doc. 1-2, p. 2; Doc. 74, p. 6). DaimlerChrysler Corporation ("DaimlerChrysler") designed, manufactured, and tested Plaintiffs' Chrysler. (Doc. 1, p. 2). DaimlerChrysler was the predecessor to Chrysler L.L.C. (Doc. 1, p. 3). In 2009, Chrysler L.L.C. (later known as Old Carco L.L.C.) and 24 affiliates filed for Chapter 11 bankruptcy (the "Bankruptcy Action"). Id. The Debtors and Fiat S.p.A. entered a Master Transaction Agreement with New Carco Acquisition L.L.C. ("New Carco"), in which New Carco would purchase all of Debtors' assets and assume certain liabilities. Id. New Carco is now known as FCA US LLC. Id. For the purpose of this Report and Recommendation, Chrysler will be referred to as FCA US.

manufacturer of T.J.'s and Rayna Dixon's ("Rayna's") child safety seats. (Doc. 67, pp. 5-17). Plaintiffs assert that the defective top latch of T.J.'s child safety seat and the defective child safety seat occupied by Rayna – which ejected from its base and went airborne in the vehicle – caused T.J.'s injuries. (Doc. 67, pp. 12-15).

All parties have been engaged in ongoing discovery – including documentary exchange, product inspections, and depositions – since 2018. (Docs. 72, 74, 75). Plaintiffs filed an Amended Complaint (Doc. 52) in September 2018, stating additional claims against Dorel related to T.J.'s and Rayna's child safety seats. (Doc. 52). FCA US filed a Rule 12(b)(6) Motion to Dismiss (Doc. 54) the First Amended Complaint (Doc. 52) for failure to state claims for relief under the LPLA. (Doc. 54). Dixon filed a Second Amended Complaint (Doc. 67) in October of 2018, stating additional claims against Dorel and FCA US. (Doc. 67). FCA US withdrew its first Motion to Dismiss (Doc. 54). (Doc. 68).

FCA US now asserts this Partial Motion to Dismiss (Doc. 72), seeking dismissal of Plaintiffs' LPLA claims against FCA US for defective design, defective construction or composition, and breach of express warranty. (Doc. 72).[3] FCA US argues the pleadings are insufficient to state a claim for relief under the LPLA. (Doc. 72). FCA US further contends the amount of discovery currently completed is not relevant to the Motion. (Docs. 72, 75). Plaintiffs oppose, arguing the pleadings are sufficient given the stage of the proceedings and ongoing discovery. (Doc. 74).

---

[3] FCA US does not seek dismissal of Plaintiffs' LPLA claim for failure to warn. (Doc. 72). Thus, the Court will not address Plaintiffs' failure to warn claim against FCA US.

3

II.   Law and Analysis

   A.   Standards governing the Rule 12(b)(6) Motion to Dismiss.

A court may grant a motion to dismiss for "failure to state a claim upon which relief can be granted" under Fed. R. Civ. P. 12(b)(6). A pleading states a claim for relief when, *inter alia*, it contains a "short and plain statement . . . showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).

To withstand a motion to dismiss, "a complaint must contain sufficient factual matter accepted as true," to "state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007)). A claim is facially plausible when it contains sufficient factual content for the court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. Plausibility does not equate to possibility or probability; it lies somewhere in between. Id. Plausibility simply calls for enough factual allegations to raise a reasonable expectation that discovery will reveal evidence to support the elements of the claim. See Twombly, 550 U.S. at 556. The court must view all well-pleaded facts in the light most favorable to the plaintiff. Yumilicious Francise, L.L.C. v. Barrie, 819 F.3d 170, 174 (5th Cir. 2016).

Although the court must accept as true all factual allegations set forth in the complaint, the same presumption does not extend to legal conclusions. Iqbal, 556 U.S. at 678. A pleading comprised of labels and conclusions, a formulaic recitation of the elements of a cause of action, or naked assertions devoid of further factual enhancement, will not stand. Id. Similarly, where the well-pleaded facts do not

4

permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but not "shown" – that the pleader is entitled to relief. Id. at 679.

In determining whether a complaint states a plausible claim for relief, a court draws on its judicial experience and common sense. Id. In considering a motion to dismiss, a court can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. Id. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. Id.

Generally, a court should not dismiss an action for failure to state a claim under Rule 12(b)(6) without giving plaintiff "at least one chance to amend." Hernandez v. Ikon Ofc. Solutions, Inc., 306 Fed.Appx. 180, 182 (5th Cir. 2009); accord Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co., 313 F.3d 305, 329 (5th Cir. 2002). However, that general rule does not apply if an amendment would be futile. Townsend v. BAC Home Loans Serv'g, L.P., 461 Fed.App'x. 367, 372 (5th Cir. 2011); Jaso v. The Coca Cola Co., 435 Fed.App'x. 346, 351–52 (5th Cir. 2011). Futility in this context means "that the amended complaint would fail to state a claim upon which relief could be granted . . . [Thus,] to determine futility, we will apply the same standard of legal sufficiency as applies under Rule 12(b)(6)." Stripling v. Jordan Prod. Co., 234 F.3d 863, 873 (5th Cir. 2000) (quotations and citations omitted); accord Fenghui Fan v. Brewer, 377 Fed.App'x. 366, 367 (5th Cir. 2010).

B. <u>Standards governing claims under the LPLA.</u>

The LPLA provides the exclusive remedy against a manufacturer for damages caused by its products. See La. R.S. 9:2800.52. A plaintiff may not recover under any theory of liability that is not set forth in the LPLA. Id.; <u>Stahl v. Novartis Pharm. Corp.</u>, 283 F.3d 254, 261-62 (5th Cir. 2002). "[N]egligence, strict liability, and breach of express warranty are not available as theories of recovery against a manufacturer, independent from the LPLA." <u>Stahl</u>, 283 F.3d at 261.

The LPLA provides that a manufacturer "shall be liable to a claimant for damage proximately caused by a characteristic of the product that renders the product unreasonably dangerous when such damage arose from a reasonably anticipated use of the product by the claimant or another person or entity." La. R.S 9:2800.54(A). A product is unreasonably dangerous for the purposes of the statute "if and only if" it is unreasonably dangerous: (1) in construction or composition, (2) in design, (3) because of inadequate warning, or (4) because of nonconformity to an express warranty of the manufacturer about the product. La. R.S. 9:2800.54(B)(1–4). Thus, the LPLA limits the plaintiff to four theories of recovery: (1) construction or composition defect; (2) design defect; (3) inadequate warning; and (4) breach of express warranty. <u>Parra v. Coloplast Corp.</u>, CV 16-14696, 2017 WL 24794, at *2 (E.D. La. Jan. 3, 2017).

C. <u>Plaintiffs' non-LPLA claims against FCA US should be dismissed.</u>

FCA US seeks dismissal with prejudice of Plaintiffs' non-LPLA claims against it. (Doc. 72-1, p. 4). Plaintiffs assert the accident and resulting injuries were caused

by the "negligence and fault of defendant Chrysler or its predecessors in interest . . . pursuant to the [LPLA] . . . ." (Doc. 67, p. 5). However, to the extent Plaintiffs assert non-LPLA claims against FCA US, those claims should be dismissed with prejudice. See La. R.S. 9:2800.52; see also Stahl, 283 F.3d at 261. Plaintiffs' exclusive remedies are set forth in the LPLA. See La. R.S. 9:2800.52 ("This Chapter establishes the exclusive theories of liability for manufacturers of damage caused by their products.").

### D. Plaintiffs' LPLA claims

"A motion to dismiss . . . is decided solely on the pleadings; thus, the degree of discovery conducted is irrelevant to a Rule 12(b)(6) motion." Senegal v. Jefferson County, 1 F.3d 1238, at *2 (5th Cir. 1993) (per curiam); see also Iqbal, 556 U.S. at 684-85 ("[T]he question presented by a motion to dismiss a complaint for insufficient pleadings does not turn on the controls placed upon the discovery process."). Although Plaintiffs assert FCA US's motion must be denied "considering the discovery posture of this case," this Court need only – indeed, can and should only – address the sufficiency of the pleadings to establish their LPLA claims.

#### 1. Plaintiffs state a plausible claim against FCA US for unreasonably dangerous construction or composition under the LPLA.

FCA US contends Plaintiffs fail to identify any manufacturer specifications for the Chrysler, much less how the Chrysler materially deviated from those specifications. (Doc. 72-1, p. 7). Plaintiffs argue they state a plausible claim for defective construction or composition under La. R.S. 9:2800.55 by naming specific

7

defects present in the vehicle – failure of the seat systems upon rear-end impact and failure of the roof upon rollover.  (Doc. 74, p. 19).

Under Section 9:2900.55 of the LPLA:

[a] product is unreasonably dangerous in construction or composition if, at the time the product left its manufacturer's control, the product deviated in a material way from the manufacturer's specifications or performance standards for the product or from otherwise identical products manufactured by the same manufacturer.

La. R.S. 9:2900.55.  Plaintiffs argue that under Flagg v. Stryker Corp., 647 Fed.Appx. 314 (5th Cir. 2016), they do not need to plead detailed allegations pre-discovery where almost all the evidence is in the possession of the manufacturer.  (Doc. 74, pp. 20-21). Plaintiffs contend Chrysler, as the manufacturer, possesses the necessary documentation which, through discovery, would allow Plaintiffs to determine whether the Chrysler failed to adhere to manufacturer specifications or performance standards.  (Doc. 74, pp. 17-18); see Flagg, 647 Fed.Appx. at 317-318.  Plaintiffs assert they merely need to allege the specific defects to state a facially plausible claim.  (Doc. 74, pp. 20-21).

The Fifth Circuit recognizes products liability as an "area of law where defendants are likely to exclusively possess the information relevant to making more detailed factual allegations."  Flagg, 647 Fed.Appx. at 317-18.  At oral argument, the parties agreed that federal district courts in Louisiana lack a consensus on the level of specificity required at this stage of an LPLA claim.  See Flagg, 647 Fed.Appx. at 317 ("[W]e have never squarely addressed how much detail and specificity is required

8

to plead that a product was unreasonably dangerous under the LPLA due to defective design, construction, or composition.").

In Flagg, the plaintiff asserted a toe implant was "unreasonably dangerous in construction and/or composition; particularly a different alloy other than Memometal Nitinol would have a better fatigue life and/or product life, the body temperature activated shape memory of the alloy used interfered and negatively influenced the fatigue life and/or product life expectancy of the implant." Id. at 316. The Fifth Circuit reversed the district court's Rule 12(b)(6)'s dismissal, noting that plaintiff's allegations provided sufficient information to "raise a reasonable expectation that discovery will reveal evidence" to support liability. Id. at 317.

Here, Plaintiffs' Second Amended Complaint (Doc. 67) asserts the front seat systems and their component parts: (1) failed to provide proper restraint; (2) failed to stay upright; (3) failed to have an effective inboard locking mechanism or locking set of teeth, gears, and pawl; (4) violated crashworthiness principles; and (5) violated federal safety standards. (Doc. 67, p. 7; Doc. 74). These failures allegedly prevented the driver from maintaining control of the vehicle, rendered the seatbelt system ineffective, and failed to protect front seat and middle seat passengers. (Doc. 67, p. 7).

Plaintiffs further allege the seat systems "lacked the strength and structural integrity to withstand foreseeable forces and stresses during motor vehicle collisions, [and] the potential for a roof collapse in the event of a roll-over." (Doc. 67, p. 9). Plaintiffs claim the Chrysler was in the same defective condition on the date of

incident as when Chrysler placed it in the stream of commerce. (Doc. 67, p. 10). During oral argument (Doc. 86), Plaintiffs stated that design schematics, testing information and results, and product standards had been requested from FCA US through discovery, but had yet to be received. (Doc. 86).

Having reasonably stated how the product failed and how that failure lead to the injury in question, the Fifth Circuit in Flagg ruled that the plaintiff's claim was sufficient. See Flagg, 647 Fed.Appx. at 318. Similarly, Plaintiffs' allegations, construed in a light most favorable to Plaintiffs, imply that a seat system with a different structural integrity and strength and different inboard locking mechanism would withstand a motor vehicle collision and roll-over. Thus, would allow the front seat system to stay upright, provide proper restraint, and effectively lock in place, preventing or reducing the risk of the front seat systems causing injury to Plaintiffs. (Doc. 67, pp. 6-10).

Plaintiffs also allege deviation from "FMVSS 207 or similar safety standards related to safety requirements for front seats in a passenger system." Id. at 7.[4] Plaintiffs argue Chrysler is in possession of the manufacturer specifications or performance standards, which had been requested but not received. (Doc. 86). At oral argument, Plaintiffs contended that deviation from federal safety standards

---

[4] Federal Motor Vehicle Safety Standard ("FMVSS") No. 207, "Seating systems," establishes performance requirements for "seats, their attachment assemblies, and their installation, to minimize the possibility of failure as a result of forces on the seat in a vehicle impact." 49 C.F.R. § 571.207. FMVSS 207 also establishes regulations pertaining to test procedures used by manufacturers in order to determine how much force can be applied to a vehicle without causing serious injuries upon impact. Id.

10

necessarily implies a deviation from the manufacturer's performance standards, absent discovery from the manufacturer regarding such standards. (Doc. 86).

Plaintiffs are not required to plead "detailed factual allegations" where a manufacturer "has sole possession of the necessary document to ultimately prove the claim." Flagg, 647 Fed. Appx. at 317-18. The Fifth Circuit has clarified that, at the motion to dismiss stage, the key question is whether the plaintiff has plausibly alleged enough information that, with discovery, could prove the manufacturer's liability. See id. at 319 (citing In re S. Scrap Material Co., 541 F.3d 584, 587 (5th Cir. 2008)).

Plaintiffs have sufficiently stated a claim for a construction or composition defect under the LPLA. FCA US's Partial Motion to Dismiss (Doc. 72) Plaintiffs' LPLA claim against it for unreasonably dangerous construction or composition defect should be DENIED.

### 2. Plaintiffs state a plausible claim against FCA US for unreasonably dangerous design under the LPLA.

FCA US argues Plaintiffs fail to plead the existence of an alternative design and, consequently, fail to plead that the danger of damage to Plaintiffs outweighed the burden on the manufacturer of adopting that design. (Doc. 72-1, pp. 5-6). Relying on Flagg, Plaintiffs contend their factual allegations are sufficient to place Chrysler on notice that an alternative design would have prevented Plaintiffs' injuries. (Doc. 74, p. 12). FCA US responds that Plaintiffs must identify a "specific" alternative design that existed when the Chrysler left the manufacturer's control, and that the

11

danger of injury outweighed the burden of adopting any "specific" designs. (Doc. 75, p. 7).

Under the LPLA, to assert a claim for an unreasonably dangerous design, plaintiffs must show that: (1) an alternative design capable of preventing the damage in question existed; and (2) the likelihood that the products' design would cause Plaintiffs' damage and the gravity of the damage outweighed the burden of implementation. La. R.S. 9:2800.56; see also Flagg, 647 Fed.Appx. at 316. "Federal courts in Louisiana have consistently held that an alternative design is crucial to survive a motion to dismiss." McLaughlin v. GlaxoSmithKline, LLC, 2014 WL 669349, at *3 (W.D. La. Jan. 6, 2014) (citations omitted).

Plaintiffs argue their allegations are "sufficient to establish that a seat system and vehicle roof or frame with the strength and structural integrity to withstand foreseeable impacts are alternative designs." (Doc. 74, p. 13). Plaintiffs assert their allegations are sufficient to plead the existence of an alternative design, and to place Chrysler on notice under Rule 8's liberal pleading standard. Id. Relying on Flagg, Plaintiffs contend that, just as in the pharmaceutical context, dismissal for Plaintiffs' failure to plead an alternative design with specificity would be inappropriate at the Rule 12(b)(6) stage. (Doc. 74, p. 14).

In Flagg, the plaintiff alleged the unreasonably dangerous design of a toe implant, particularly the shape and incorrect sizing, contributed to the fracture of the implant and the difficulty of removal once the implants broke. See Flagg, 647 Fed.Appx. at 317. The Fifth Circuit found those facts constitute "an allegation of

12

precisely how the product failed and how that failure caused his injury and would support an ultimate verdict that the sizing and shape of the implants deviated from the normal specifications and performance standards . . . ." Id. The Fifth Circuit held that "very detailed and specific allegations are not required to plead a plausible claim at this stage, before [the plaintiff] has had an opportunity for discovery." Id.[5]

However, FCA US argues Plaintiffs must plead the existence of a "specific alternative design." (Doc. 72-1, p. 6); see Robertson v. AstraZeneca Pharms., LP, 2015 WL 5823326, at 4 (E.D. La. Oct. 6, 2015) (citing Becnel v. Mercedes-Benz USA, LLC, 2014 WL 4450431, at *4 (E.D. La. Sept. 10, 2014)); see also Rivers v. Remington Arms Co., LLC, 2018 WL 746392, at *4 (E.D. La. Feb. 7, 2018) ("A conclusory allegation that an alternative design exists will not suffice."). FCA US contends Plaintiffs fail to identify any specific design capable of preventing Plaintiffs' injuries, but merely speculate one exists. (Doc. 72-1, p. 6).

However, Plaintiffs do not simply assert a recitation of the elements of a design defect claim. Rather, Plaintiffs' Second Amended Complaint asserts the Chrysler's front seat systems and their component parts were defective in that they: (1) failed to provide proper restraint; (2) failed to stay upright; (3) failed to have an effective inboard locking mechanism or locking set of teeth, gears, and pawl; (4) violated crashworthiness principles; and (5) violated federal safety standards. (Doc. 67, p. 7). Plaintiffs contend "Chrysler is aware there exists an alternative design that could

---

[5] Plaintiffs contend they have not yet received complete discovery documentation related to the seat systems and roof construction of the Chrysler. (Doc. 74, p. 15).

have prevented the seat systems from failing in a rear-end collision or in the event of a roll-over." Id.

Plaintiffs further allege "the likelihood that the defective design of the minivan's seat systems and their component parts would cause significant injuries or death to the middle row passengers outweigh any burden in adopting an alternative design and the adverse effect, if any, of such alternative design on the utility of the seats." Id. Plaintiff assert the Chrysler was defective because "the seat systems of the minivan lacked the strength and structural integrity to withstand foreseeable forces and stresses during motor vehicle collisions, the potential for a roof collapse in the event of a roll-over, and . . . adequate crashworthiness protection." (Doc. 67, p. 9).

Plaintiffs contend there were "safer alternative designs to eliminate or significantly reduce the possibility of the catastrophic failure of the seat systems" and the "roof system." Id. Plaintiffs assert these safer alternative designs would eliminate or reduce the risk of unexpected failure of the seat systems and unexpected roof collapse in a roll-over event; prevent or reduce the risk of injury without impairing the product's utility; and were technologically and economically feasible. Id.

Plaintiffs allegations contain more than a mere conclusory allegation that an alternative design existed. Plaintiffs allegations allow the Court to draw reasonable inference that a seat system with a different strength and structural integrity existed that would have endured forces and stresses sustained in the automobile collision

14

and roll-over event. See Flagg, 647 Fed.Appx. at 318-319 (noting that a products liability lawsuit, in which almost all the evidence is in the possession of the defendant, makes it likely impossible for plaintiffs to state more specific allegations regarding defects in manufacture and design without first having the benefit of discovery and expert analysis); Cf. Rivers, 2018 WL 746392, at *4 (dismissing a design defect claim where plaintiff fails to allege any facts relating to a viable alternative design, but simply declares that one exists). "At this stage, 'judicial experience' and 'common sense' counsel against dismissal of [this] claim[]." Marks v. Westwind Helicopters, Inc., 2016 WL 5746292, at *5 (W.D. La. Jan. 20, 2016), report and recommendation adopted, 2016 WL 5794367 (W.D. La. Sept. 30, 2016).

Construing the Second Amended Complaint (Doc. 67) in a light most favorable to Plaintiffs, Plaintiffs have asserted a plausible claim for unreasonably dangerous design defect under the LPLA. Accordingly, FCA US's Partial Motion to Dismiss (Doc. 72) Plaintiffs' design defect claim should be DENIED.

### 3. Plaintiffs fail to state a plausible claim against FCA US for an unreasonably dangerous product due to nonconformity to an express warranty under the LPLA.

The LPLA defines an express warranty as:

> a representation, statement of alleged fact or promise about a product or its nature, material or workmanship that represents, affirms or promises that the product or its nature, material or workmanship possesses specified characteristics or qualities or will meet a specified level of performance. "Express warranty" does not mean a general opinion about or general praise of a product.

La. R.S. 9:2800.53(6). Under the LPLA, a product is "unreasonably dangerous when it does not conform to an express warranty made at any time by the manufacturer

15

about the product if the express warranty has induced the claimant or another person or entity to use the product and the claimant's damage was proximately caused because the express warranty was untrue." La. R.S. 9:2800.58.

FCA US asserts Plaintiffs fail to adequately plead any of these elements. (Doc. 72-1, p. 8). FCA US contends the only specific warranty identified in the Second Amended Complaint is "[b]reach of express warranties of safety and fitness of use." (Docs. 72-1, p. 8; Doc. 67, p. 8). FCA US argues "representations that a product is 'safe' or 'effective and safe for its intended use' do not create an express warranty because such statements are nothing beyond a general opinion or praise." (Doc. 72-1, p. 8); Pierre v. Medtronic, Inc., 2018 WL 1911829, at *5 (E.D. La. Apr. 23, 2018).

Plaintiffs argue their Second Amended Complaint alleges Chrysler made express representations, beyond general opinions and praise, as to the safety of the vehicle for use by children in the passenger cabin of the vehicle. (Doc. 74, p. 22). Plaintiffs contend the Chrysler owner's manual expressly represents to consumers that the middle row seats of the vehicle were safe for child safety seats, and actually directed consumers to place child safety seats in those seats. Id. Citing Caboni v. Gen. Motors Corp., 278 F.3d 448, 452 (5th Cir. 2002), Plaintiffs further argue the Fifth Circuit has held statements made in the automobile owner's manual may constitute an express warranty under the LPLA. Id. Plaintiffs contend drawings included in the owner's manual indicating where child safety seats should be installed constitute an express warranty. (Doc. 74, p. 23); see La. R.S. 9:2800.53(6) ("A sample or model of a product is an express warranty.").

While Plaintiffs are "not required to identify the exact language used in the warranty, [they] must specify the warranty in question and explain why the warranty was untrue." Lussan v. Merck Sharp & Dohme Corp., 2017 WL 2377504, at *3 (E.D. La. Jun. 1, 2017) (citing Robertson v. AstraZeneca Pharm., L.P., 2015 WL 5823326, at *5 (E.D. La. Oct. 6, 2015) (citations omitted)). "Stating that a product is safe or effective for its intended use is nothing more than a general opinion about or praise for a product and therefore does not satisfy the statutory definition of an express warranty." Corley v. Stryker Corp., 2014 WL 3375596, at *5 (W.D. La. May 27, 2014), report and recommendation adopted sub nom. Corley v. Stryker Orthopaedics, 2014 WL 3125990 (W.D. La. July 3, 2014); see also Becnel v. Mercedes-Benz USA, LLC, 2014 WL 4450431, at *5 (E.D. La. Sept. 10, 2014) (finding that statements in Mercedes-Benz's advertising or websites are puffery, general praise, or general opinion not constituting express warranties under the LPLA).

Plaintiffs' Second Amended Complaint (Doc. 67) alleges Chrysler "publicly marketed and represented the minivan to families, such as Petitioners, as a vehicle that was safe for their children." (Doc. 67, p. 12). Plaintiffs' Second Amended Complaint (Doc. 67) further alleges "Chrysler's marketing materials and representations contained no warning of the known dangers of defective seats within the minivan or the collapsing of the roof in a roll-over event, and encouraged families, such as Petitioners, to place children behind seats that Chrysler knew could fail or collapse . . . ." (Doc. 67, p. 12). Plaintiffs contend they relied upon Chrysler's false marketing materials and representations regarding safety. Id.

17

Plaintiffs argue in their brief that the owner's manual contained drawings constituting an express warranty regarding the safety of placing child safety seats in the middle-row seats. (Doc. 74, p. 22-23). There is no reference in the Second Amended Complaint (Doc. 67) regarding the owner's manual. "'[P]leadings cannot be expanded via an opposition memorandum.'" Smitty's Supply, Inc. v. Hegna, CV 16-13396, 2019 WL 1084743, at *2 (E.D. La. Mar. 7, 2019) (quoting Beard v. Wolf, 2014 WL 3687236, at *2 (E.D. La. July 23, 2014)); accord In re Enron Corp. Sec., Derivative & ERISA Litig., 761 F.Supp.2d 504, 566 (S.D. Tex. 2011) ("[I]t is axiomatic that a complaint cannot be amended by briefs in opposition to a motion to dismiss.") (internal citations and quotations omitted). Rather, Plaintiffs' Second Amended Complaint contains allegations referring only to marketing materials and general praise or opinion regarding the safety of the product which do not constitute an express warranty. (Doc. 67, p. 12); see Corley v. Stryker Corp., 2014 WL 3375596, at *5.

Here, Plaintiffs fail to sufficiently state the existence of an express warranty. Thus, FCA US's Partial Motion to Dismiss (Doc. 72) Plaintiffs' LPLA claim for nonconformity with an express warranty should be GRANTED.[6]

---

[6] Although no motion to amend is pending before the Court, Plaintiffs alternatively seek to amend their Second Amended Complaint (Doc. 67) to cure any deficiencies found by the Court. (Doc. 74, p. 23). FCA US opposes Plaintiffs' attempt to cure any deficiencies through a third amendment. (Doc. 75, p. 1). Plaintiffs have amended their Complaint twice – once after FCA US filed its first Motion to Dismiss. (Docs. 52, 54, 67). The Court "should freely give leave [to amend a complaint] when justice so requires." Fed. R. Civ. P. 15(a)(2). "[U]nless there is a substantial reason, such as undue delay, bad faith, dilatory motive, or undue prejudice to the opposing party, the discretion of the district court is not broad enough to permit denial." Martin's Herend Imports v. Diamond & Gem Trading, 195 F.3d 765 (5th Cir. 1999). Refusal to grant leave to amend "without any justifying reasons is not an exercise of

III. <u>Conclusion</u>

Because the LPLA provides the exclusive remedy for products liability claims against FCA US; because Plaintiffs fail to assert a plausible LPLA claim for nonconformity to express warranty; and because Plaintiffs state plausible LPLA claims for unreasonably dangerous defective design and defective construction or composition;

IT IS RECOMMENDED that FCA US's Partial Motion to Dismiss (Doc. 72) be GRANTED IN PART and DENIED IN PART. To the extent FCA US seeks dismissal of Plaintiffs' LPLA claims against FCA US for unreasonably dangerous construction or composition, and design defect, FCA US's Partial Motion to Dismiss (Doc. 72) should be DENIED IN PART. To the extent FCA US seeks dismissal of Plaintiffs' LPLA claim against FCA US due to nonconformity to an express warranty and Plaintiffs' non-LPLA claims against FCA US, FCA US's Partial Motion to Dismiss (Doc. 72) should be GRANTED IN PART.

IT IS FURTHER RECOMMENDED that Plaintiffs' non-LPLA claims be DISMISSED WITH PREJUDICE.

IT IS FURTHER RECOMMENDED that Plaintiffs' LPLA claim for nonconformity to an express warranty against FCA US be DISMISSED WITHOUT

---

discretion; it is merely abuse of that discretion and inconsistent with the spirit of the Federal Rules." Foman v. Davis, 83 S.Ct. 227, 230 (1962). Because the Court cannot ascertain what "express representations" the owner's manual may or may not contain, the Court is unable to determine whether any amendment would be futile. Thus, the Court recommends Plaintiffs be allowed to seek leave to amend their Complaint to cure the deficient allegations for nonconformity to an express warranty against FCA US.

19

PREJUDICE, subject to Plaintiffs' right to amend their complaint to cure, provided they have a good faith basis for doing so, the legally deficient allegations, within the fourteen (14) day deadline to file objections to this report and recommendation.

Under the provisions of 28 U.S.C. § 636(b)(1)(c) and Fed. R. Civ. P. 72(b), parties aggrieved by this Report and Recommendation have fourteen (14) calendar days from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof. No other briefs (such as supplemental objections, reply briefs, etc.) may be filed. Providing a courtesy copy of the objection to the undersigned is neither required nor encouraged. Timely objections will be considered by the District Judge before a final ruling.

Failure to file written objections to the proposed findings, conclusions, and recommendations contained in this Report and Recommendation within fourteen (14) days from the date of its service, or within the time frame authorized by Fed. R. Civ. P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Judge, except upon grounds of plain error.

THUS DONE AND SIGNED in Alexandria, Louisiana, on this \_\_\_\_\_ day of August 2019.

_____
JOSEPH H.L. PEREZ-MONTES
UNITED STATES MAGISTRATE JUDGE